IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIFFANEE GARNIER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

NOW COMES the Plaintiff, Tiffanee Garnier, by and through her attorneys, Christopher Smith Trial Group, LLC, and complaining of the Defendant United States of America as follows:

## JURISDICTION

1. This is a civil action against the United States of America for damages brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671-2680 ("FTCA") arising out of injuries described below, deliberately inflicted upon federal prisoner Tiffanee Garnier while in the custody of the United States Municipal Correctional Center (MCC) in Chicago, Illinois.

2. On April 30, 2025, Ms. Garnier, through her attorneys, including the undersigned, submitted a claim for the injuries detailed in this Complaint to Director William K. Marshall III, Federal Bureau of Prisons, 320 First Street, NW, Washington, DC 20534; and Regional Director Andre Matevousian, RO North Central, Regional Office, 400 State Avenue, Suite 800, Kansas City, KS 66101.

3. Shortly thereafter on May 2, 2025, the United States acknowledged receipt of claim, identifying it as claim number TRT-NCR-2025-07228.

4. More than six months have passed since the claim documents were submitted and received.

5. The claim is, therefore, presumptively denied and Plaintiff now files suit within six months of that presumptive denial date.

6. Ms. Garnier, after the incidents described in the Complaint was transferred to Phoenix FCI.

7. The jurisdiction of this Court is invoked pursuant to the judicial code 28 U.S.C. § 1331, §§ 1346(b) and 2671-2680.

8. This Court has jurisdiction over the Defendants United States of America ("United States") because each cause of action alleged arises out of tortious acts and omissions committed by federal government employees acting within the scope of their employment while working at the Chicago MCC.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b) because the Complained events occurred at the Chicago MCC, within the Northern District of Illinois.

## PARTIES

10. Plaintiff Tiffanee Garnier is 39 years old, and is currently an inmate at FCI Phoenix, of the Federal Bureau of Prisons.

## BACKGROUND

11. Tiffanee Garnier was sent to the Municipal Correctional Center ("MCC") in Chicago, Illinois on or about December 2, 2023, to await transfer to another facility.

12. At the MCC, Ms. Garnier was housed in Unit 12 B, a unit for women detainees and prisoners.

13. Brittany Hall was a correctional officer assigned to Plaintiff's Unit, primarily for

the 2:30 pm to 10pm shift.

14. Officer Hall also sometimes worked night shifts.

15. One of Officer Hall's Supervisors was Lt. Joy.

16. Ms. Garnier would see Lt. Joy, Officer Hall's supervisor, when she came to the Unit throughout the month of December 2023 and into January 2024.

17. Other correctional officers were also assigned to the Plaintiff's Unit for various shifts and breaks.

### I. Tortious Misconduct at the MCC

18. Shortly after Ms. Garnier arrived at Unit 12 Officer Hall began speaking to her on a personal level.

19. Ms. Garnier noticed Officer Hall taking a personal interest in several other inmates.

20. On or about Saturday December 6, 2023, Ms. Garnier noticed Officer Hall socializing with other inmates in and near the computer room/backroom area where there are no cameras.

21. Ms. Garnier observed what appeared to be a party with inmates dancing and stripping off their clothes.

22. Ms. Garnier saw Officer Hall kissing an inmate.

23. Ms. Garnier was surprised and went back to her cell.

24. During that December, Officer Hall brought yeast for the inmates which allowed them to create contraband alcohol or "hooch".

25. During December 2023, Officer Hall also allowed inmates to use a prison cell with a working electrical outlet and batteries, to light and smoke K2, a synthetic THC derivative.

26. During the month of December, Officer Hall brought her "boom box" into the unit to allow inmates to play music.

27. On or about December 25, 2023, during a party, Officer Hall gave Ms. Garnier what she believed was a Wonka chocolate bar.

28. After consuming the chocolate, Ms. Garnier felt like she was under the influence of a controlled substance and began to dance.

29. Ms. Garnier was later told the chocolate contained psychedelic mushrooms.

30. At one point while the Plaintiff was under the influence of the drug, Officer B. Hall began grabbing one of Ms. Garnier's breasts before reaching into her underwear and grabbing her vagina.

31. Ms. Garnier stopped Officer Hall from continuing the physical sexual assault.

32. Confused and in fear of retaliation and punishment if she made a complaint, Ms. Garnier did not initially file a grievance.

33. This was not the last incident of sexual misconduct.

34. Officer Hall had insisted that Ms. Garnier along with other female inmates wear only panties and bras on other days.

35. On December 29, 2023, Officer Hall told Ms. Garnier to flash her while she walked by her room saying, "lift your shirt and flash your titties, I ain't the police, I'm from the streets."

36. On New Year's Eve, December 31, 2023, Officer Hall facilitated another so-called party.

37. Officer Hall brought a backpack into the facility with alcohol and psychedelic Wonka bars.

38. Ms. Garnier saw Officer Hall empty out the backpack with the contraband.

39. Officer Hall played music on the boom box; served alcohol; passed out psychedelic chocolates; and allowed K2 to be smoked.

40. Officer Hall and many of the inmates became intoxicated.

41. Hall allowed inmates to pair up and become intimate in cells.

42. During this party Hall again groped Ms. Garnier.

43. Officer Hall began kissing Ms. Garnier's neck, asking her to be her girlfriend, and groping her body.

44. Ms. Garnier, who felt cornered and sexually violated, became angry and upset.

45. When Officer Hall was rejected by Ms. Garnier, she made sexual advances towards other inmates.

46. At the end of this "party", Officer Hall instituted a lockdown, which enabled Officer Hall to have privacy to engage in sexual behavior with another inmate.

47. One of the inmates made a formal complaint against Officer Hall after this party.

48. Officer Hall was removed from the Unit within two weeks of the New Years Eve Party.

49. After realizing that Officer Hall was not coming back, Plaintiff worked up the courage to make a formal complaint which described the sexual assaults and other misconduct.

**II.     Federal Charges Against Officer Hall**

50. On March 4, 2025 the US Attorneys filed a nine page indictment against Officer Hall in the Northern District of Illinois Case Number 1:25-cr-00119.

51. US attorneys allege that Officer Hall sexually abused four women—victims A, B, C, and D—in Unit 12 of the MCC during December of 2023.

5

52. Count One of the indictment alleges that Officer Hall "while in MCC-Chicago, a federal prison, knowingly engaged in sexual contact with Victim A, a person who was in official detention and under the custodial, supervisory, and disciplinary authority of the defendant, by touching Victim A's breasts, while the defendant and Victim A were at MCC-Chicago."

53. Count Two of the indictment alleges that Officer Hall "knowingly engaged in a sexual act with Victim A, a person who was in official detention and under the custodial, supervisory, and disciplinary authority of the defendant, by contacting Victim A's vulva with her mouth and by penetrating Victim A's genital opening with her hand and finger, while the defendant and Victim A were at MCC-Chicago."

54. Count Three of the indictment alleges that Officer Hall "knowingly engaged in sexual contact with Victim B, a person who was in official detention and under the custodial, supervisory, and disciplinary authority of the defendant, by touching Victim B's breasts, while the defendant and Victim B were at MCC-Chicago."

55. Count Four of the indictment alleges that Officer Hall "knowingly engaged in a sexual act with Victim C, a person who was in official detention and under the custodial, supervisory, and disciplinary authority of the defendant, by penetrating Victim C's genital opening with her hand and finger, while the defendant and Victim C were at MCC-Chicago."

56. Count Five of the indictment alleges that Officer Hall "knowingly engaged in a sexual act with Victim D, a person who was in official detention and under the custodial, supervisory, and disciplinary authority of the defendant, by penetrating Victim D's genital opening with her hand and finger, while the defendant and Victim D were at MCC-Chicago."

57. Count Six of the indictment alleges that Officer Hall "knowingly engaged in sexual contact with Victim C, a person who was in official detention and under the custodial,

supervisory, and disciplinary authority of the defendant, by touching Victim C's genitalia, while the defendant and Victim C were at MCC-Chicago."

58. Count Seven of the indictment alleges that Officer Hall "knowingly engaged in a sexual act with Victim C, a person who was in official detention and under the custodial, supervisory, and disciplinary authority of the defendant, by penetrating Victim C's genital opening with her hand and finger, while the defendant and Victim C were at MCC-Chicago."

59. Count Eight of the indictment alleges that Officer Hall "knowingly engaged in a sexual act with Victim A, a person who was in official detention and under the custodial, supervisory, and disciplinary authority of the defendant, by contacting Victim A's vulva with her mouth and by penetrating Victim A's genital opening with her hand and finger, while the defendant and Victim A were at MCC-Chicago."

60. Plaintiff appeared before a grand jury for her testimony.

61. If convicted, Officer Hall faces up to 17 years in prison for misconduct that includes her misconduct against the Plaintiff.

### III. The Chicago MCC's Culture of Misconduct Included Turning a Blind Eye to Officer Hall's Criminal Behavior.

62. The Plaintiff had been aware from Correctional Officers that complaints would be dismissed by the Unit Team.

63. Ms. Hall told inmates that any Complaints would be dismissed by the Unit Team.

64. Ms. Hall was able to bring drugs, alcohol, and a boom box for parties from outside the facility through MCC security.

65. There were rumors that Officer Hall's immediate supervisor, Lt. Joy, was involved in sexual activity with a male inmate.

66. At a minimum, Lt. Joy brought a male inmate to her office for "visits."

67. The MCC and its employees are under investigation for allowing drugs and other contraband into a federal correctional facility.

68. The MCC has a duty to Plaintiff and other Inmates to provide a safe and drug free environment.

69. The MCC Women's Unit houses inmates who are battling addictions of all kinds.

70. Plaintiff was given notice that the prison could not consider a claim for damages and directed her to file an FTCA claim.

71. The Plaintiff has exhausted all available administrative remedies related to these incidents and/or such attempts were frustrated by the actions of prison officials.

### IV. The MCC's Supervisory Failures Allowed a Dangerous and Illegal Culture to Flourish.

72. Any warden or supervisor serious about protecting prisoners would supervise its employees to prevent them from bringing drugs, alcohol, and other contraband into the MCC.

73. The Warden, Lt. Joy, and other supervisory BOP employees negligently failed to supervise Officer Hall and other employees, which allowed Hall to bring drugs, alcohol and other contraband into the MCC on multiple occasions when Plaintiff was harmed.

74. Any Warden serious about protecting prisoners would not allow regular use of areas outside of security camera surveillance to be used for parties, sexual assault and/or consensual sex between employees and inmates.

75. The Warden, Lt. Joy, and other supervisory BOP employees negligently failed to supervise Officer Hall to prevent her from interacting with inmates in areas known to be off camera on multiple occasions when Plaintiff was harmed.

76. No warden who is serious about misconduct would promote a culture that discourages inmates from filing grievances and encourages employees to band together to stop

inmates from filing grievances.

77. The Warden, Lt. Joy, and other supervisory BOP employees actively discouraged inmates from filing grievances that would have exposed their failure to supervise or other malfeasance.

78. The sexual assaults and batteries of the Plaintiff by Officer Hall, is a is a violation of the MCC's duty of care, an intentional tort covered by the law-enforcement exception to the FTCA, and a serious felony.

79. Officer Hall physically assaulted and battered Plaintiff by drugging her: a violation of the MCC's duty of care, intentional torts covered by the law-enforcement exception to the FTCA, and a serious felony.

80. The Warden, Lt. Joy, and other supervisory employees had a duty to appropriately supervise Officer Hall in a manner that would prevent her from preying on inmates.

81. The Warden, Lt. Joy, and other supervisory employees, by their negligent supervision, allowed Officer Hall and others to create a dangerous environment, rife with drugs and sexual assault, in violation of their duty of care to Plaintiff.

82. The actions of the Warden, Lt. Joy, Officer Hall, and others (including those responsible for allowing Hall to bring contraband into the facility) were the proximate cause of Plaintiff's injuries.

83. The actions of prison officials, supervisors, the Warden, Lt. Joy, Officer Hall and others were intentional and/or reckless/negligent and were the but for cause of Plaintiff's injuries.

84. The warden at the time of the claimed incident was Raul Maldonado Jr.

85. The prison and the prison supervisors were at least negligent with regard to how

their negligent supervision caused Plaintiff to be sexually assaulted and battered.

86. Prison officials and supervisors at the BOP and MCC recklessly endangered the safety of the Plaintiff and others at the MCC.

**V. The Federal Bureau of Prisons has not Taken Inmate Safety from Sexual Assault Seriously.**

87. 28 CFR § 115.31(a) describes the FBP's training requirements regarding its zero-tolerance policy for sexual abuse and sexual harassment.

88. The Bureau of Prisons has been a troubled agency in recent years.

89. In December of 2024 the government acknowledged that it will pay nearly $116 million to more than 100 women who were abused at a Federal prison in Dublin, California.

### Count I—FTCA
### Assault and Battery

90. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

91. The intentional and/or reckless actions of Officer Hall towards Plaintiff, described above, constitute unwanted touching, sexual battery, and assault/battery by drugging.

92. As a proximate result of the above-detailed tortious actions by Hall, a BOP employee, Plaintiff suffered injuries including pain and suffering, emotional distress and mental anguish.

### Count II—FTCA
### Negligent Supervision

93. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

94. As described above, supervising agents such as the Warden, Lt. Joy, and other BOP employees, caused Plaintiff's injuries through negligent supervision.

95. The supervising agents and employees had a duty to supervise Officer Hall.

96. The supervising agents and employees were at least negligent in their supervision

10

of Officer Hall.

97. As a proximate result of the above-detailed tortious actions, Plaintiff suffered injuries including pain and suffering, emotional distress and mental anguish.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court enter Judgment in her favor and against the United States, award compensatory damages and attorney's fees and costs against the United States. The Plaintiff also seeks declaratory, injunctive, or other equitable relief that this Court deems appropriate.

Respectfully submitted,

/s/ Christopher Smith
Attorneys for Plaintiff

Christopher Smith
Christopher Smith Trial Group, LLC
30 W. Jackson, Suite 856
Chicago, IL 60604
312.432.0400